**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

| | | |
|---|---|---|
| RENEE HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. CBD-17-3707 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Renee Hill ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 13, and Commissioner's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 18. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, and **REVERSES** and **REMANDS** this matter for further proceedings consistent with this opinion. A separate order will issue.

I.      **Procedural Background**

On April 7, 2015, Plaintiff filed for DIB under Title II. R. 17, 86. Plaintiff alleged disability beginning April 1, 2015. R. 17, 86. Plaintiff alleged disability due to post-traumatic stress disorder ("PTSD"), bipolar, manic-depression, and anxiety. R. 86. Plaintiff's claim was initially denied on August 6, 2015,[1] and upon reconsideration on December 29, 2015. R. 17, 94–95, 106–10. On January 13, 2016, Plaintiff requested an administrative hearing. R. 17, 121. This was Plaintiff's second request for a hearing. R. 17, 68–84. Plaintiff previously applied for DIB on September 19, 2011. R. 17, 71. On March 20, 2014, Plaintiff's first hearing resulted in an unfavorable decision denying her claim. R. 17, 68–84. Plaintiff's second hearing was held before an administrative law judge ("ALJ") on January 4, 2017. R. 17, 29–67. On January 13, 2017, the ALJ denied Plaintiff's second claim for DIB. R. 28. Plaintiff sought review of this decision by the Appeals Council, which concluded on November 11, 2017, that there was no basis for granting Plaintiff's Request for Review. R. 1–5. Plaintiff filed the instant proceeding on December 15, 2017. ECF No. 1.

II.     **Standard of Review**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2015). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907

---

[1] The ALJ's decision states Plaintiff's claim "was denied initially on April 7, 2015." R. 17. However, a copy of the initial denial included in the record is dated August 6, 2015. R. 94-95, 108-10.

F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If she is doing such activity, she is not disabled. If she is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If she does not have such impairment or combination of impairments, she is not disabled. If she does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If she does have such impairment, she is disabled. If she does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If she can perform such work, she is not disabled. If she cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If she can perform other work, she is not disabled. If she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)-

(c). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. § 404.1545(a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

### III. Analysis

In this matter, the ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 20–28. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since April 1, 2015, the alleged onset date of her alleged disability. R. 20. At step two, under 20 C.F.R. § 404.1520(c), the ALJ determined that Plaintiff had the following severe impairments: "major depressive disorder; bipolar disorder; cyclothymic disorder; and post-traumatic stress disorder ("PTSD")." R. 20. The ALJ stated that the listed impairments were severe because they, "cause significant limitations in [Plaintiff's] ability to perform basic work activities." R. 20. In step three, the ALJ found that Plaintiff suffered from moderate difficulties in both social functioning and concentration, persistence, or pace. R. 22. Ultimately, the ALJ determined that Plaintiff did not have "an impairment or a combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." R. 21. At step four, the ALJ determined that Plaintiff had the RFC to perform:

> [A] full range of work at all exertional levels but with nonexertional limitations. Because of her mental impairments, she can perform jobs consisting of unskilled, routine, and repetitive tasks, in a work environment with flexibly [*sic*] hourly quotas, involving only simple, work-related decisions, with few, if any, work place changes, and with only occasional interaction with coworkers and no interaction with the public.

R. 23. The ALJ then determined that Plaintiff did not have any past relevant work. R. 26. At step five, however, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." R. 27. Accordingly, Plaintiff's claim for DIB was denied. R. 27–28.

On appeal, Plaintiff requests that the Court grant summary judgment in her favor or, in the alternative, remand this matter to the Social Security Administration ("SSA") for a new administrative hearing. For the reasons set forth below, the Court **REVERSES** the ALJ's decision in part and **REMANDS** the matter for further proceedings.

### A. *Residual Functional Capacity*

#### 1. The RFC assessment complies with the *Mascio* requirements for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace.

Plaintiff argues that the RFC assessment fails to fully account for her moderate difficulties with concentration, persistence, or pace by failing to specifically include limitations for fast-paced production. Pl.'s Mot. 6.

In *Mascio*, the Fourth Circuit held that a RFC assessment must account for an ALJ's step three finding of moderate limitations in concentration, persistence, or pace beyond limiting a claimant to performing only "simple, routine tasks." *Mascio v. Colvin,* 780 F.3d 632, 638 (4th Cir. 2015). This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.,* Civ. No. ELH-14-2214, 2015

WL 2395108, at *3 (D. Md. May 19, 2015). In performing this assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34,478) (internal quotation marks omitted). "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted)).

The functional area of concentration, persistence, or pace, "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(3) (2012). Since *Mascio*, courts have reviewed various ALJs' attempts to include corresponding limitations in their RFC assessments for moderate limitations in this functional area. *See, e.g.*, *Wilson v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-2666, 2018 WL 3941946, at *5 (D. Md. Aug. 16, 2018) (holding limitations for interactions with other individuals does not address concentration, persistence, or pace; rather it addresses social functioning); *McDonald v. Comm'r*, Civ. No. SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (concluding "a RFC restriction that [the claimant could] perform 'simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes and only occasional supervision' " was insufficient to meet *Mascio* requirements); *Steele v. Comm'r, Soc. Sec.*, Civ. No. MJG-15-1725, 2016 WL 1427014, at *4 (D. Md. Apr. 11, 2016) (citing SSR 96-9P) (holding that when a RFC includes durational limitations an ALJ must consider that the normal 8-hour workday already includes breaks approximately every two (2) hours and provide further explanation as to how limiting someone to breaks every two hours

7

"adequately accounts for a moderate limitation in the ability to stay on task" or else it does not meet the *Mascio* requirements); *Henig v. Colvin*, Civ. No. TMD-13-1623, 2015 WL 5081619, at *12 (D. Md. Aug. 26, 2015) (listing cases) (finding the ALJ's determination that a claimant should be excluded from "work involving significant stress, such as production-line type work" sufficient to meet *Mascio* requirements for corresponding limitations for moderate difficulties in concentration, persistence, or pace).

Here, the ALJ found that Plaintiff suffered from moderate difficulties in concentration, persistence, or pace. R. 22. The RFC assessment included limitations to "jobs consisting of unskilled, routine, and repetitive tasks, in a work environment with flexibly [*sic*] hourly quotas, involving only simple work-related decisions, with few, if any, work place changes . . . ." R. 23. With the addition of the limitation to jobs with flexible hourly quotas, this RFC directly addresses Plaintiff's ability "to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(3). This is sufficient to meet the *Mascio* requirements. *See Henig*, 2015 WL 5081619, at *12. Further, this limitation does address the pace of production as it requires any qualifying job to allow for variability in production. Accordingly, remand is not necessary on the basis of this claim.

### 2. The ALJ's RFC assessment and narrative discussion failed to address conflicting evidence indicating Plaintiff's difficulties with past a supervisor.

Plaintiff argues that the ALJ failed to include sufficient limitations in the RFC assessment for Plaintiff's moderate difficulties in social functioning as it did not specifically address contact with supervisors. Pl.'s Mot. 8.

"[S]ome district courts within the Fourth Circuit have extended the holding in *Mascio* to require an ALJ to either include restrictions in the RFC arising out of those mild limitations [for different functional areas] or justify the omission of such restrictions." *Adams v. Colvin*, No.

8

1:15CV00673, 2016 WL 4007608, at *7 (M.D.N.C. July 26, 2016), report and recommendation adopted, No. 1:15CV673, 2016 WL 6651324 (M.D.N.C. Nov. 10, 2016) (citing cases); *see, e.g.*, *Russell v. Colvin*, Civ. No. 1:14-CV-00203-MR-DLH, 2015 WL 3766228, at *4 (W.D.N.C. June 16, 2015).² When Courts in the Maryland District have extended *Mascio* requirements to the area of social functioning, we have limited it to situations where an ALJ made a finding of at least moderate difficulties in social functioning. *See, e.g.*, *Shryock v. Comm'r*, Civ. No. SAG-15-1136, 2016 WL 245531, at *2 n.3 (D. Md. Jan. 21, 2016) ("I further note that the ALJ also found a moderate limitation in the area of social functioning, but imposed no corresponding limitation in the RFC assessment. Because this appears to be a *Mascio*-like error in a different functional area, the ALJ should further address this issue on remand."); *see also, e.g.*, *McMahon v. Colvin*, Civ. A. No. TMD-12-00432, 2013 WL 5939146, at *3 (D. Md. Nov. 4, 2013) (holding that a RFC assessment "adequately captures all of [a claimant's] limitations despite [the ALJ's] finding [of] moderate limitations in social functioning" as a review of the ALJ's discussion of the evidence supports the lack of specific limitations addressing social functioning). Further, it is not required that a corresponding RFC restriction specifically address interactions with each category of individuals one might interact with while at work. *See, e.g.*, *Lommel v. Colvin*, Civ. No. TMD-15-2006, 2016 WL 4395897, at *8 (D. Md. Aug. 18, 2016) (noting how "the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to

---

² The Court in *Russell v. Colvin* held that:

> Although the ALJ's findings at step two and three may not require an RFC [*sic*] that imposes limitations on social functioning, the ALJ must at least provide a sufficient explanation in the decision to allow this Court to determine why no limitations as to social functioning were included in the RFC despite the ALJ's finding that Plaintiff has moderate difficulties in social functioning.

*Russell*, 2015 WL 3766228, at *4.

the VE to only occasional contact with co-workers or supervisors accounts for Plaintiff's moderate difficulties in social functioning"). However, the burden is on the ALJ to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). An ALJ must do so by providing a narrative explanation with citations to evidence to support it. *Mascio*, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34,478) (internal quotation marks omitted). Ultimately, an ALJ must build an accurate and logical bridge from that evidence to her conclusion. *Woods*, 888 F.3d at 694 (citing *Monroe*, 826 F.3d at 189).

Here, the ALJ found Plaintiff has "moderate difficulties" in social functioning. R. 22. Adopting the logic that *Mascio* applies to other functional areas, this finding necessitates the ALJ include either a corresponding limitation in the RFC assessment or an explanation as to why one was not necessary. *See, e.g.*, *Shryock*, 2016 WL 245531, at *2 n.3. The ALJ in this case included limitations to jobs "with only occasional interaction with co-workers and no interaction with the public." R. 23. No limitations concerning interactions with supervisors were included. In her subsequent discussion, the ALJ explained that she had "considered [Plaintiff's] history of PTSD and reported difficulty managing stress and difficulty with social interactions in limiting her to work involving . . . occasional interaction with co-workers and the public." R. 21. The ALJ also noted that Plaintiff's "PTSD symptoms were triggered by hostile interactions with a work supervisor, and symptoms improved after she left work and began taking her medications regularly." R. 21. In general, when an individual has moderate difficulties with social functioning courts have not required the RFC specifically include limitations with respect to all the three types of social interaction one encounters during working hours: supervisors, co-workers, and the public. *See, e.g.*, *Lommel*, 2016 WL 4395897, at *8 (noting how "the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to

10

the VE to only occasional contact with co-workers or supervisors accounts for Plaintiff's moderate difficulties in social functioning"). However, an ALJ also bears the burden of addressing conflicting evidence in the record. *Hays*, 907 F.2d at 1456 (citations omitted). In this case, the ALJ failed to address why Plaintiff's "hostile interaction" with a supervisor should not translate into limitations for how Plaintiff interacts with future supervisors. A review of the record indicates that these hostile interactions were limited to a single supervisor. *See, e.g.*, R. 323 (reporting that Plaintiff had "a hostile verbal altercation with her supervisor"); R. 357 (describing in more detail the ongoing issues with Plaintiff's then-supervisor). However, the record also contains evidence suggesting that Plaintiff's reaction to her supervisor is linked to a prior traumatic experience she endured while serving in the United States Army. *See* R. 334 (noting that "it is conceivable" the prior trauma perpetrated by Plaintiff's commanding officer "aggravated the severity of [Plaintiff's] current emotional reaction" to her supervisor's behavior). This raises the possibility that Plaintiff's interactions with future supervisors might trigger symptoms. As it is currently articulated, the ALJ's narrative discussion does not resolve this issue. Further, it is not the Court's role to engage in reweighing of the evidence or step into the role of the finder of facts. *See Hays*, 907 F.2d at 1456 (citations omitted). Accordingly, upon remand the ALJ is directed to specifically address the question of whether Plaintiff's moderate difficulties with social function necessitate limitations in her interactions with all supervisors or provide an explanation for why that is not necessary. The ALJ is also reminded to include citations to specific evidence in the record she used to support her assessment.

### B. The ALJ's hypothetical questions posed to the VE were not based upon substantial evidence.

Plaintiff argues that the hypothetical questions the ALJ posed to the vocational expert ("VE") did not properly account for Plaintiff's moderate limitations in concentration,

persistence, or pace. Pl.'s Mot. 6. Plaintiff also argues that the available positions the VE presented in response to the ALJ's hypotheticals could not be held by someone with Plaintiff's RFC. Pl.'s Mot. 6–7. Considering this, Plaintiff argues Commissioner failed to meet her burden at step five. Pl.'s Mot. 6–7.

After determining a claimant's RFC, an ALJ "must then decide the ultimate issue of whether the Commissioner has satisfied her burden of showing that the claimant can engage in a job that 'exist[s] in significant numbers in the national economy.'" *Morgan v. Barnhart*, 142 F. App'x 716, 720 (4th Cir. 2005) (quoting 20 C.F.R. § 404.1560(c)(1) (2004); 20 C.F.R. § 404.1560(c)(2) (providing that the Commissioner bears the burden at the second tier of step five)). Typically, an ALJ uses evidence presented by a VE. *Id.* However:

> [T]he ALJ must rely primarily on the Dictionary of Occupational Titles ("DOT") for information about the requirements of work in the national economy, and must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and the DOT, before relying on testimony by the vocational expert.

*Chestnut v. Berryhill*, Civ. No. 8:17-CV-01696-GLS, 2018 WL 4565540, at *4 (D. Md. Sept. 24, 2018) (citing SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000)). Further, the VE's testimony must be made "in response to questions from the ALJ that accurately reflect the claimant's work-related abilities." *Morgan*, 142 F. App'x at 720 (stating a VE's testimony must be "based on the claimant's age, education, work experience, and RFC" for an ALJ to rely upon it). "[A]n ALJ is afforded 'great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question.'" *Chavis v. Berryhill*, Civ. A. No. ADC-17-1123, 2018 WL 1033267, at *14 (D. Md. Feb. 22, 2018) (quoting *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (per curiam)). Accordingly, "a hypothetical question is unimpeachable if it adequately reflects a residual

functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (citations omitted) (emphasis omitted).

Here, the hearing transcript shows that the ALJ posed several hypothetical questions to the VE during his testimony. R. 57–64. This questioning began with a scenario concerning a hypothetical individual with limitations that mirrored those ultimately incorporated in the RFC determination. R. 57. The ALJ went on to pose at least four (4) variations on that same hypothetical individual's limitations and solicited answers from the VE to each one. R. 59–60, 62, 64. While Plaintiff might take issue with the fact that the ALJ did not incorporate all the limitations articulated in these variations into her final RFC assessment, the ALJ is free to accept or reject any suggested limitations. *Chavis*, 2018 WL 1033267, at *14. Further, the first step of the Court's analysis is only concerned with whether the questions "accurately reflect[ed]" Plaintiff's RFC. *Fisher*, 181 F. App'x at 364. As at least one of the questions mirrored the ultimate RFC assessment, the inquiry turns next to whether there is substantial evidence to support the RFC assessment. *Chavis*, 2018 WL 1033267, at *14 (quoting *Koonce*, 1999 WL 7864, at *5). As previously analyzed, the RFC assessment as it is currently articulated fails to account for conflicting evidence concerning Plaintiff's "moderate difficulties" in social functioning. *See supra* Section A.2. Therefore, while the way in which the ALJ posed her hypothetical questions to the VE was procedurally correct, the RFC failed to account for Plaintiff's moderate difficulties in social functioning. *See Mascio*, 780 F.3d at 637–38 (noting that where a hypothetical matches an ALJ's RFC finding, it is "incomplete only if the ALJ fail[s] to account for a relevant factor when determining [the claimant's] residual functional capacity"). Accordingly, remand is required for this issue.

### C. The ALJ did not err by refusing to get an additional psychological consultative examination.

Plaintiff argues that the ALJ erred in refusing to obtain additional psychological testing despite Plaintiff's counsel's request at the hearing. Pl.'s Mot. 8. Plaintiff speculates as to the ALJ's motive in refusing to obtain this additional medical information and provides no corroborating evidence to support her assertions. Pl.'s Mot. 8. Commissioner counters that no basis exists for granting Plaintiff's request for additional information. Comm'r's Mot. 7. The Court agrees with Commissioner on this issue.

While the claimant bears the ultimate burden to prove disability, *Preston v. Heckler*, 769 F.2d 988, 990 n* (4th Cir.1985) (citation omitted), the ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173–74 (4th Cir. 1986). If there is insufficient evidence in the record to make a determination on Plaintiff's claim, the ALJ has a duty to obtain additional information concerning Plaintiff's impairments. *Id.* ALJs commonly supplement claimants' records by ordering consultative examinations as provided for by the regulations.[3]

---

[3] The regulations state in pertinent part:

> We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
>> (1) The additional evidence needed is not contained in the records of your medical sources;
>>
>> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>>
>> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or

Ultimately, the decision on whether to order a consultative examination is left to the discretion of the ALJ. *See, e.g.*, *Halpern v. Colvin*, Civ. No. TDC-14-2538, 2016 WL 429965, at *12 (D. Md. Feb. 4, 2016), *subsequently aff'd sub nom. Halpern v. SSA*, 676 F. App'x 210 (4th Cir. 2017) (citation omitted) ("Because Plaintiff does not point to any inconsistency or insufficiency of the evidence, a consultative examination was not warranted in this case."). A plaintiff must show that an ALJ's failure to fulfill her duty to develop the record resulted in prejudice to the plaintiff. *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).

Here, Plaintiff's counsel requested the ALJ order a psychological consultative examination if there was "any question" concerning proof of Plaintiff's "illiteracy and/or the current functioning of her IQ." R. 65. The ALJ responded that she would "take [Plaintiff's request] under advisement." R. 66. In denying Plaintiff's request, the ALJ reasoned that "[t]he record does not support the need for this request. Additionally, even if [Plaintiff] had significant cognitive limitations, the undersigned finds the residual functional capacity would accommodate these limitations and GRID rule 204.00 would apply." R. 17. In her motion, Plaintiff does not argue that including additional evidence of her intelligence would have changed the outcome of her case.[4] Rather, Plaintiff appears to be arguing that the additional testing would have delayed

---

> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a.

[4] The Court notes that a review of the record reveals both documentary evidence and hearing testimony discussed Plaintiff's intelligence and limitations concerning reading and comprehension. *See* R. 35-36, 205, 311-15. At the hearing, Plaintiff testified that she graduated high school at a third-grade reading level and that she was in special education classes "[a]ll [her] life." R. 36. She describes how she has trouble filling out forms and needs the aid of a

15

the ALJ's decision so that her assessment of Plaintiff's disability claim would have included two new functional areas: "understanding, remembering or applying information and adapting or managing oneself."[5] Pl.'s Mot. 8. Plaintiff surmises that this would have increased her chances of "winning" her claim as, "[i]t is clear that [Plaintiff] has serious difficulties with both [functional areas]."[6] Pl.'s Mot. 8. While the Court is sympathetic to Plaintiff's frustration that more favorable regulations came into effect too late for her to benefit from them, this is not sufficient to establish prejudice. *See, e.g.*, *Marsh*, 632 F.2d 296. Accordingly, remand is not warranted on this issue.

### D. The ALJ properly considered Dr. Langlieb's psychological CE report.

Plaintiff argues that the ALJ failed to properly assess Dr. Alan Langlieb's report as she did not mention Dr. Langlieb's consultative findings in her decision. Pl.'s Mot. 9. Plaintiff points out that the ALJ claimed Dr. Langlieb's report lacked a function-by-function analysis.

---

calculator to make simple mathematic calculations. R. 35-36. Additionally, several medical reports and/or notes confirm Plaintiff's self-reported educational background. *See* R. 311, 342.

[5] Plaintiff alleges that the ALJ's "quickness in denying counsel's request for psychological testing was dictated by the rapidly approaching sunset of the mental regulations" that did not include those new functional areas. Pl.'s Mot. 8. Plaintiff provides no support for this allegation other than timing and the Court does not find this persuasive. Furthermore, the Court takes note that Plaintiff filed her request for a hearing exactly one year before the ALJ issued her decision and more than one year before the regulations changed. R. 17, 28, 121.

[6] The Court takes note that Plaintiff had legal representation throughout her hearing. R. 31. At the beginning of the hearing, the ALJ asked Plaintiff's counsel if he "had an opportunity to review the record." R. 32. By stating that he had, Plaintiff's counsel acknowledged his awareness of this potential deficiency in the record. R. 32. It is Plaintiff's burden to provide sufficient evidence to prove her disability. *Preston*, 769 F.2d at 991 n* (citation omitted). As the ALJ acknowledged Plaintiff's request and determined that the record did not support the need for additional evidence relating to Plaintiff's "intelligence (IQ)," she met her duty to develop the record in light of Plaintiff being a represented party. *See Marsh*, 632 F.2d at 299-300 (holding the ALJ "breached his promise to [the unrepresented claimant] to obtain further evidence from . . . the treating physician" and "competent counsel" would have been able to obtain the information necessary and develop the record).

Pl.'s Mot. 9. According to Plaintiff, the report did address Plaintiff's concentration, energy, and impulse control. Pl.'s Mot. 9. Plaintiff asserts that this oversight indicates that "the ALJ made a selective review of Dr. Langlieb's report." Pl.'s Mot. 9.

When the evidence includes opinions by medical and psychological professionals, an ALJ is required to evaluate them and—unless he gives controlling weight to a treating source—indicate the weight he accorded them. 20 C.F.R. § 404.1527(c); SSR 96-6P, 1996 WL 374180 (S.S.A.) (stating that "an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physicians and psychologists," but policy requires they may not ignore these opinions and must explain the weight given to them in their decisions). This is because the Court "cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). When a consultative examination is included, the report generated is supposed to include various elements. *See* 20 C.F.R. § 404.1519n(c) (listing elements for a "complete" report). However, while an ALJ will "ordinarily request a medical opinion as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report incomplete." 20 C.F.R. § 404.1519n(c)(6) (citing 20 C.F.R. § 404.1513(a)(3))

Here, the ALJ gave Dr. Langlieb's report "little weight" as it was "not a function-by-function assessment of [Plaintiff's] abilities." R. 25. The ALJ also noted that Dr. Langlieb's treatment notes were consistent with his objective testing. R. 25. A review of Dr. Langlieb's report reveals that the information concerning Plaintiff's concentration, energy and impulse control is located under the section "PAST PSYCHIATRIC HISTORY." R. 312–13. Contrary to Plaintiff's assertion, this indicates that the statements in the report concerning these functions

17

are in fact self-reported information and not Dr. Langlieb's medical opinion. Further, as the lack of a medical opinion does not mean the report itself is incomplete, the ALJ was not required to obtain additional information from Dr. Langlieb. *See, e.g.*, *Brown v. Comm'r of Soc. Sec.*, Civ. No. TJS-12-3073, 2013 WL 5182698, at *3 (D. Md. Sept. 12, 2013) (noting the argument that "consultative exams are a 'tremendous waste of money' without medical a source statement" is "without merit" where the regulations state the lack thereof does not make the report "incomplete"). Accordingly, remand is not required on this issue.

> **E. Remand is not warranted where the ALJ did not specifically mention the underlying source of Plaintiff's symptoms.**

Plaintiff argues the ALJ's failure to consider Plaintiff's mental function in the context of Plaintiff's traumatic experience involving a car accident was reversible error. Pl.'s Mot. 9. Plaintiff offers no citation to case law or regulations that require an ALJ consider the source of the symptoms that give rise to a claimant's disability. *See c.f.* 20 C.F.R. § 404.1529 (stating an ALJ will consider all the claimant's symptoms when determining whether someone is disabled).

Here, the ALJ specifically found that Plaintiff had several "severe impairments" including major depressive disorder and PTSD. R. 20. However, the ALJ noted that Plaintiff's "symptoms are generally controlled with medication" and that she had not had any "major setbacks" recently. R. 24. Absent a clearer articulation of Plaintiff's argument on this issue with specific citations to authority that supports her position, the Court is left to conclude that remand is not required on this issue.

## IV. Conclusion

Based on the foregoing, the Court **REVERSES** and **REMANDS** this matter with specific instructions for the ALJ as outlined in the foregoing opinion. In making this decision, the Court offers no opinion on the ALJ's ultimate determination that Plaintiff is not disabled within the meaning of the Social Security Law.

January 22, 2019                                                          /s/
                                                                Charles B. Day
                                                                United States Magistrate Judge

CBD/clc